STATE OF NORTH CAROLINA v. KNO MICHELLE RIVENS

No. 100

(Filed 1 February 1980)

1. **Robbery § 5.4— armed robbery—inability to state firearm was real—instruction on common law robbery not required—retroactivity of decision**

    The decision of *State v. Thompson*, 297 N.C. 285, which overruled the decision of *State v. Bailey*, 278 N.C. 80, and held that when the State offers evidence in an armed robbery case that the robbery was attempted or accomplished by the use or threatened use of what appeared to the victim to be a firearm or other dangerous weapon, evidence elicited on cross-examination that the witness or witnesses could not positively testify that the instrument was in fact a firearm or dangerous weapon is not of sufficient probative value to warrant submission of the lesser included offense of common law robbery, *is held* to apply retroactively to a case which was in the appellate division when *State v. Thompson* was decided.

2. **Constitutional Law § 33— retroactive decision—no violation of ex post facto clause**

    There is no violation of the *ex post facto* clause in either the U.S. Constitution or the N.C. Constitution when a court decision is applied retroactively because the clause applies to legislative and not judicial action. Nor is there a violation of due process or equal protection when a decision is applied retroactively.

ON petition for a writ of certiorari by the State from the decision of the Court of Appeals, 41 N.C. App. 404, 255 S.E. 2d

335 (1979) (unpublished opinion by *Mitchell, J.* with *Parker* and *Martin [Harry C.], JJ.* concurring), which granted the defendant a new trial. *Walker (Hal H.), J.* presided at the trial of this action at the 29 August 1978 Session of ROWAN County Superior Court.

Defendant was charged in an indictment, proper in form, with robbery with a firearm in violation of G.S. 14-87. The State's evidence tended to show that the robbery victim, Clarence Christy, left a Quik Stop store in Kannapolis at 11:30 p.m. on 21 July 1978. He got in his car and pulled across the street to his home at 1306 Sides Avenue. When he got out of his car, a black man approached and pointed a pistol at him. Some streetlights located approximately seventy-five yards from the scene provided lighting, but this lighting was partially blocked by some shade trees.

The man told Christy to turn around. He then removed Christy's wallet which contained more than $100. Another black man approached and stated that they wre going to put Christy in the trunk of his own car. The first man then demanded that Christy give them the keys to his car. The man realized that he had already taken Christy's keys so he instructed him to walk towards the rear of his car. As he did so, Christy screamed, shoved one of the men and ran away. The two men got into Christy's car.

Deputy Sheriff Ronnie Terry heard Christy's scream and went to the scene. As the two men drove away, Terry pursued on foot. He fired two shots at the driver's side of the car. The two men got out and ran. Terry caught the defendant, but the other man escaped. Defendant was unarmed and no weapon was found in the car or at the scene. Terry was unable to state whether the other man was armed.

The trial judge instructed on robbery with a firearm and the jury found defendant guilty of this offense. The Court of Appeals reversed the conviction and ordered a new trial for failure by the trial judge to instruct on the lesser included offense of common law robbery.

Other facts necessary to the decision of this case will be discussed in the opinion.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Jo Anne Sanford for the State.*

*William V. Bost for the defendant.*

COPELAND, Justice.

[1] In awarding the defendant a new trial in an unpublished opinion filed on 15 May 1979, the Court of Appeals relied on a decision by this Court announced in 1971, *State v. Bailey*, 278 N.C. 80, 178 S.E. 2d 809 (1971). Three days after the Court of Appeals filed its opinion in this case, this Court overruled *Bailey* in the decision of *State v. Thompson*, 297 N.C. 285, 254 S.E. 2d 526 (1979).

The State argues that the case *sub judice* is factually indistinguishable from *Thompson* and thus, we should apply *Thompson* as precedent for this case and conclude that no new trial is required. Defendant argues that we are prohibited from doing so by the *ex post facto* clauses in the North Carolina and United States Constitutions.

We agree with the State that this case is indistinguishable from *Thompson*. Robbery is the taking with intent to steal, of personal property of another, from his person or in his presence, without his consent or against his will, by violence or intimidation. *State v. Smith*, 268 N.C. 167, 150 S.E. 2d 194 (1966). When firearms or other dangerous weapons are used to perpetrate the robbery more severe punishment may be imposed. G.S. 14-87(a) (Cum. Supp. 1979); *see, State v. Smith, supra; State v. Stewart*, 255 N.C. 571, 122 S.E. 2d 355 (1961). Common law robbery is a lesser included offense of armed robbery. When evidence of common law robbery is present in the case, it is error for the court to fail to submit this lesser included offense to the jury. *State v. Wenrich*, 251 N.C. 460, 111 S.E. 2d 582 (1959).

In *Bailey*, this Court essentially held that the victim's inability to state whether the pistol used by the robber was a real gun or a toy gun raised an issue for the jury as to whether defendant had in his possession and used or threatened to use a firearm or other dangerous weapon to perpetrate the robbery. In *Thompson*, we were satisfied that a robbery victim should not have to force that issue during the course of the robbery in order to determine

the true character of the weapon. *See, State v. Thompson,* 39 N.C. App. 375, 250 S.E. 2d 710 (1977) (Erwin, J. dissenting). Thus, the following rule, which we today emphatically reaffirm, was stated as follows:

> "[W]hen the State offers evidence in an armed robbery case that the robbery was attempted or accomplished by the use or threatened use of what *appeared* to the victim to be a firearm or other dangerous weapon, evidence elicited on cross-examination that the witness or witnesses could not positively testify that the instrument used was in fact a firearm or dangerous weapon is not of sufficient probative value to warrant submission of the lesser included offense of common law robbery. When a person perpetrates a robbery by brandishing an instrument which appears to be a firearm, or other dangerous weapon, in the absence of any evidence to the contrary, the law will presume the instrument to be what his conduct represents it to be—a firearm or other dangerous weapon." *State v. Thompson, supra* at 289, 254 S.E. 2d at 528. (Emphasis in original.)

The following relevant testimony appears in the record in this case:

> "Q. Mr. Christy, could you see anything in that man's hand?
>
> A. There was enough light, looked like something shiny to me. I took it for a gun.
>
> Q. Where was that gun pointed?
>
> A. Towards me.
>
> Q. Was that gun a rifle or a pistol?
>
> A. Pistol.
>
> Q. Once you saw that pistol in that man's hand, did he say anything else to you?
>
> A. Told me to turn around. I didn't hesitate. I turned around.

\*   \*   \*

Q. What happened then?

A. Well, this one had the gun in my back, or whatever it was.

*    *    *

Q. What, then, happened?

A. He made me get in the car and I set [sic] down on the seat and he put an object to my head and said, 'You better find them keys quick.'

*    *    *

Q. Where, at your head, was that object put?

A. Right along here.

Q. You're showing the back left side of your head above your left ear, is that correct?

A. Yes.

Q. What did that object feel like?

A. The barrel of a gun."

On cross-examination, Christy simply stated, "I felt like it was a gun." The case *sub judice* presents the same fact situation as in *Thompson.* The question remains whether we may apply the rule set forth in *Thompson* to this case.

A decision is wholly prospective in effect when it applies solely to fact situations arising after the filing date of the opinion. *Linkletter v. Walker*, 381 U.S. 618, 14 L.Ed. 2d 601, 85 S.Ct. 1731 (1965). Retroactive or retrospective application of a decision covers application of that decision to the following situations: (1) the parties and facts of the case in which the new rule is announced; (2) cases in which the factual event, trial and appeal are all at an end but in which a collateral attack is brought; (3) cases pending on appeal when the decision is announced; (4) cases awaiting trial; and (5) cases initiated in the future but arising from earlier occurrences. *See*, Annot., *Prospective or Retroactive Operation of Overruling Decision*, 10 A.L.R. 3d 1371 (1966).

This case was in the Court of Appeals awaiting certification to the trial court when our decision in *Thompson* was announced. On 4 June 1979, this case was certified by the Court of Appeals to the trial court for a new trial. The State's time period for seeking discretionary review expired on 19 June 1979. The State sought issuance of a writ of certiorari on 27 July 1979 and it was allowed by this Court on 23 August 1979.

In *Goodson v. Lehmon*, 225 N.C. 514, 35 S.E. 2d 623 (1945), it was held that a cause is not finally terminated by a decision by the appellate division when the case is certified back to the trial court for further action. There has not been final judgment until the authority of the trial court has been exercised by entering judgment in accordance with such opinion. Thus, this case may be considered as pending on appeal at the time the decision in *Thompson* was filed.

Decisions are generally presumed to operate retroactively. *Mason v. Nelson Cotton Co.*, 148 N.C. 492, 62 S.E. 625 (1908). Such overruling decisions are given solely prospective application only when there is compelling reason to do so. *Fitzgerald v. Meissner & Hicks, Inc.*, 38 Wis. 2d 571, 157 N.W. 2d 595 (1968); *In Re Kloppenberg's Estate*, 82 N.J. Super. 117, 196 A. 2d 800 (1964); *see generally*, Annot., *Retroactive or Merely Prospective Operation of New Rule Adopted by Court in Overruling Precedent—Federal Cases*, 14 L.Ed. 2d 992 (1966); Chief Justice Traynor (California Supreme Court), *Conflict of Laws in Time: The Sweep of New Rules in Criminal Law*, 1967 Duke L.J. 713. *See, e.g., State v. Harris*, 281 N.C. 542, 189 S.E. 2d 249 (1972) (retroactive application would disrupt the orderly administration of criminal justice); *Hill v. Brown*, 144 N.C. 117, 56 S.E. 693 (1907) (no retroactive effect because of reliance in entering contracts upon the law as interpreted in the overruled decision); *Hill v. Atlantic & N.C. Railroad Co.*, 143 N.C. 539, 55 S.E. 854 (1906) (no retroactive effect because property and contract rights were acquired on the basis of the former interpretation of a statute).

In *Linkletter v. Walker, supra,* it was stated after careful analysis of numerous state and federal decisions that decisions are applied retroactively without discussion while a case is on direct review and the various factors for determining whether a decision should be given only prospective effect are generally

discussed only when a collateral attack is brought. *Cf., State v. Bell*, 136 N.C. 674, 49 S.E. 163 (1904) (no retroactive application even to the parties in *Bell* because of reliance on the advice of counsel which was based on the overruled decision); *cf. also, Michigan v. Payne*, 412 U.S. 47, 36 L.Ed. 2d 736, 93 S.Ct. 1966 (1973) (rule of *North Carolina v. Pearce* not applied retroactively although *Payne* was pending on appeal when *Pearce* was decided).

In *Huddleston v. Dwyer*, 322 U.S. 232, 236, 88 L.Ed. 1246, 1249, 64 S.Ct. 1015, 1018 (1944) it was held that,

> "It is the duty of the federal appellate courts, as well as the trial court [in a diversity of citizenship case], to ascertain and apply the state law where, as in this case, it controls decision. *Meredith v. Winter Haven*, 320 U.S. 228. And a judgment of a federal court ruled by state law and correctly applying that law as authoritatively declared by the state courts when the judgment was rendered, must be reversed on appellate review if in the meantime the state courts have disapproved of their former rulings and adopted different ones. 'Until such time as a case is no longer *sub judice*, the duty rests upon federal courts to apply state law under the Rules of Decision statute in accordance with the then controlling decision of the highest state court.' *Vandenbark v. Owens-Illinois Co.*, 311 U.S. 538, 543." *See also, Wichita Royalty Co. v. City National Bank of Wichita Falls*, 306 U.S. 103, 83 L.Ed. 515, 59 S.Ct. 420 (1939); *Madden v. Metropolitan Life Insurance Co.*, 138 F. 2d 708 (5th Cir. 1943), *cert. denied*, 322 U.S. 730 (1944); Annot., 151 A.L.R. 987 (1944).

Also, a court will apply a decision retroactively to other cases pending before that court at the time the overruling decision is announced. *See, e.g., McNerlin v. Denno*, 378 U.S. 575, 12 L.Ed. 2d 1041, 84 S.Ct. 1933 (1964) (rule in *Jackson v. Denno* applied retroactively to a pending case and the case was remanded for reconsideration in light of *Jackson*); *Fahy v. Connecticut*, 375 U.S. 85, 11 L.Ed. 2d 171, 84 S.Ct. 229 (1963) (*Mapp* exclusionary rule applied retroactively to a pending case.) The rationale for applying a decision to other cases pending on appeal appears to be the realization that the pending case could just as easily have been the case in which the new rule was announced.

State v. Rivens

In making the determination as to retroactive application, no distinction is drawn between civil and criminal cases. *Linkletter v. Walker, supra.* Retroactive application is neither required nor prohibited by the United States Constitution. *Id.; Johnson v. New Jersey,* 384 U.S. 719, 16 L.Ed. 2d 882, 86 S.Ct. 1772, *rehearing denied,* 385 U.S. 890 (1966).

[2] There is no violation of the *ex post facto* clause in the United States Constitution when a decision is applied retroactively because the clause applies to legislative and not judicial action. *Frank v. Mangum,* 237 U.S. 309, 59 L.Ed. 969, 35 S.Ct. 582 (1915). We hold that the same is true with respect to the *ex post facto* clause in the North Carolina Constitution. A party has no vested right in a decision of this Court, *Mason v. Cotton Co., supra,* and there is no violation of due process, *Tidal Oil Co. v. Flanagan,* 263 U.S. 444, 68 L.Ed. 382, 44 S.Ct. 197 (1924), *Patterson v. Colorado,* 205 U.S. 454, 51 L.Ed. 879, 27 S.Ct. 556 (1907), or equal protection, *Sunray Oil Co. v. Commissioner of Internal Revenue,* 147 F. 2d 962 (10th Cir.), *cert. denied,* 325 U.S. 861 (1945), in applying a decision retroactively. *See also, In re Will of Allis,* 6 Wis. 2d 1, 94 N.W. 2d 226 (1959). Thus, the determination as to the retroactive or prospective application of a decision is a matter of judicial policy for the states. *Haney v. City of Lexington,* 386 S.W. 2d 738 (Ky. 1964); *Benyard v. Wainwright,* 322 So. 2d 473 (Fla. 1975).

[1] We hold that the decision in *Thompson* applies retroactively to this case (which was in the appellate division when *Thompson* was decided) because there is no compelling reason why it should not apply. Defendant was either guilty or not guilty of robbery with a firearm. The jury found him guilty. From all of the above, it is evident that no injustice results from denying him the new trial the Court of Appeals had ordered for failure to submit the lesser included offense of common law robbery to the jury. The Court of Appeals is reversed.

Reversed and remanded.